IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

TERRY ARMSTRONG, #172250,      )
                                )
        Plaintiff,             )
                                )
      v.                     )       CASE NO. 2:12-CV-647-WHA
                                )            [WO]
                                )
CAROLYN GOLSON, et al.,      )
                                )
        Defendants.        )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Terry Armstrong ["Armstrong"], an indigent inmate currently incarcerated at the J. O. Davis Correctional Facility. In this complaint, Armstrong challenges actions of correctional officials with respect to his classification level. Compl. (Doc. No. 1) at 3-4. Armstrong names Carolyn Golson, the Director of Classification for the Alabama Department of Corrections, and Stephanie Atchison, the Assistant Director of Classification, as defendants in this cause of action. Armstrong seeks a declaratory judgment, injunctive relief and monetary damages. *Id*. at 4.

Upon review of the complaint, the court concludes that dismissal of this case prior to service of process is appropriate under 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and (iii).[1]

---

[1] The court granted Armstrong leave to proceed *in forma pauperis* in this cause of action (Doc. No. 3). Thus, the complaint is subject to screening under the provisions of 28 U.S.C. § 1915(e)(2)(B) which directs this court to dismiss the instant civil action prior to service of process if it determines that the

## II.  DISCUSSION

### A.  Facts

Armstrong maintains he meets the eligibility criteria for a less restrictive custody level but despite his requests for this favorable treatment the defendants refuse to lower his classification level and allow him the opportunity to participate in work release or other "less restrictive placement programs."  Compl. (Doc. No. 1) at 3-4.  Armstrong alleges the defendants' failure to lower his custody classification is violative of his equal protection rights because "they allow inmates with greater offenses than that of the Plaintiff to participate in such programs."  *Id*. at 4.  Armstrong also complains the denial of a lower custody level violates his right to due process and is in violation of administrative regulations.  *Id*. at 4-5.

### B.  Absolute Immunity

With respect to any claims Armstrong lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v.*

---

complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

*Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities."  *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## C.  Equal Protection

Armstrong asserts the defendants have denied him equal protection by placing other inmates with greater offenses in lower custody classifications and less secure facilities while his requests for similar favorable treatment have been denied.  Court Doc. No. 1 at 4.  This claim is subject to summary dismissal.

In order to present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other

constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact . . . . [An allegation] of . . . discriminatory intent or purpose [related to a constitutionally protected interest] is required to [set forth] a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this one, where the plaintiff challenges actions of correctional officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons & Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Moreover, mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause. *E & T Realty Co. v. Strickland*, 830 F.2d 1107 (11th Cir. 1987), *cert. denied*, 485 U.S. 961 (1988); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment or even arbitrary administration of state power are insufficient to establish discrimination violative of equal protection).

4

Armstrong utterly and completely fails to meet his pleading burden as he does not allege the defendants subjected him to adverse treatment based on some constitutionally impermissible reason; rather, he simply makes the conclusory assertion that differential treatment resulted in an equal protection violation.  Specifically, as the sole basis for his equal protection claim, Armstrong relies exclusively on the fact that he remains at his previous custody level while other inmates with alleged greater offenses have been granted downgrades in their custody levels and, presumably, access to favorable prison programs. The mere differential treatment referenced by Armstrong does not implicate a violation of the Equal Protection Clause.  *Sweet*, 467 F.3d at 1319;  *E & T Realty*, 830 F.2d at 1114-15; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). Consequently, the equal protection claim presented by Armstrong is due to be dismissed under the provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

## D.  Due Process

Armstrong argues the refusal of the defendants to lower his custody classification and place him in a less restrictive prison environment deprives him of a liberty interest protected by the Fourteenth Amendment to the Constitution.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law."  The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further

deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g.*, *Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state."  *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

An inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Because Armstrong has no constitutionally protected interest in the level of his custody classification, correctional officials may assign him to any classification level without

implicating the protections of due process.  Thus, any claim challenging the process provided Armstrong with respect to the decision affecting his classification level is frivolous and due to be dismissed in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

To the extent Armstrong challenges the constitutionality of his confinement in a more restrictive prison environment than that of a community corrections center or work release facility, a convicted prisoner has no constitutionally protected right to confinement in a particular correctional facility.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (no liberty interest arising from Due Process Clause in obtaining transfer to less secure prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *see also Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (a prisoner has no constitutional right to be confined in a particular institution and may be subjected to an interstate transfer without implicating the Constitution).  Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in either the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him.  *Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Although the plaintiff's confinement at the J. O. Davis Correctional Facility may entail "more burdensome conditions" than that of a less secure facility this confinement is "'within the normal limits or range of custody which the conviction has authorized the State to impose.' *[Meachum,* 427 U.S. at 225]; *see also Montanye v. Haymes,* 427 U.S. 236, 242,

96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)." *Sandin*, 515 U.S. at 478.  Consequently, the failure to provide Armstrong access to correctional facilities he deems more desirable does not rise to the level of a constitutional violation and such claim therefore provides no basis for relief in this 42 U.S.C. § 1983 action.

With respect to Armstrong's allegation regarding entitlement to placement on work release, this claim is likewise without merit as the law is well settled that an inmate has no constitutionally protected interest in work release because the failure to place an inmate in this program does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *Kitchen v. Upshaw*, 286 F.3d 179, 188 (4th Cir. 2002) (inmate denied permission to participate in work release has no constitutionally protected interest in work release because "it is clear that being denied permission to leave jail in order to work is nothing more than an ordinary experience of inmates."); *Codd v. Brown*, 949 F.2d, 879 (6th Cir. 1991) (prisoners have no inherent due process interest in work release); *see also Francis v. Fox*, 838 F.2d 1147 (11th Cir. 1988) (no liberty interest created by state laws or regulations which entitles an inmate to consideration for the work release program because the statutes and regulations establishing the program are framed in discretionary terms).

### E.  Administrative Regulations

Armstrong maintains the actions of the defendants are "in violation of the . . . rules and regulations" governing classification.  Compl. (Doc. No. 1) at 5.  The alleged violation

of departmental rules, regulations or policies does not assert a violation of an inmate's constitutional rights. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987). This claim is therefore due to be dismissed as frivolous pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that this case be dismissed with prejudice prior to service of process in accordance with the directives of 28 U.S.C. § 1915(e)(2)(B)(i), (ii) and (iii).

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before August 15, 2012**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein*

*v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

      Done this 1st day of August, 2012.

                     /s/ Wallace Capel, Jr.
                     WALLACE CAPEL, JR.
                     UNITED STATES MAGISTRATE JUDGE